LEMON, Appellant, v. THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA, Respondent.

(269 N. W. 90.)

(File No. 7903. Opinion filed October 5, 1936.)

L. E. *Waggoner* and *R. C. Riter,* both of Sioux Falls, for
Appellant.

*Boyce, Warren & Fairbank,* of Sioux Falls, for Respondent.

CAMPBELL, J.   Defendant insurance company issued its two policies of insurance in the sum of $5,000 each upon the life of Claude Lemon, in which policies Ruth Lemon, his wife, was named as beneficiary.   Claude Lemon died November 26, 1930.   About 4½ years later (March, 1935) the beneficiary, Ruth Lemon, alleging that the insured had fully performed all the terms and conditions of said policies upon his part and that said policies were in full force and effect at the time of his death, instituted the present action to recover thereon.   Defendant company admitted the execution of the policies, but alleged that they were canceled and void prior to the death of the insured by reason of his failure to pay premiums thereon as required by the terms thereof.   The matter came on for trial upon the issues thus joined and at the close of plaintiff's testimony the court granted the motion of defendant company for a directed verdict.   From judgment entered thereon and from the denial of her application for new trial plaintiff has now appealed.

The case made out by appellant, stated most favorably to her, may be summarized as to its facts as follows:   In the year 1929 decedent, Claude Lemon, and appellant, his wife, resided in the state of Ohio, continuing such residence at all times until the death of Claude Lemon.   On March 6, 1929, respondent insurance company made, executed, and delivered to decedent in the state of Ohio two policies of insurance upon his life, identical in terms and provisions, each in the sum of $5,000, each payable to appellant as beneficiary.   Each policy provided for an annual premium (changing in amount after the third year) of $124.60.   Each policy provided for a grace period of thirty-one days and further provided:   "Premiums may be made payable annually, semiannually or quarterly.   A change from one method to another may be made upon written request by the Insured on a form provided by the Company."   The amount of semiannual premium on each policy, if paid in that fashion, would have been $64.75.   The policies would not earn any dividends which might be used automatically to maintain the policies in force after a premium due date (and the expiration of the grace period) until three years from the date of issue.   Each policy provided:   "If any premium be not paid when due, as specified on the first page hereof, this Policy shall be void and all premiums forfeited to the Company, except

as herein provided." Each policy further provided: "No condition, provision or privilege of this Policy can be waived or modified in any case except by an endorsement hereon signed by the President, one of the Vice Presidents, the Secretary, one of the Assistant Secretaries, the Actuary, the Associate Actuary or one of the Assistant Actuaries. No modification or change shall be made in this Policy except such as is in accordance with the laws of the State in which the same is issued. No Agent has power in behalf of the Company to make or modify this or any other contract of insurance, to extend the time for paying a premium, to waive any forfeiture, or to bind the Company by making any promise, or by making or receiving any representation or information."

The premium on each policy for the first year was paid in advance at the time of execution and delivery. The second annual premium on each policy came due of course on March 6, 1930. Shortly prior to that date the insured, apparently anticipating some difficulty in making the payments when due, called at the office of one Rogers, who was a general agent for the company at Stuebenville, Ohio. Although verdict was directed at the close of plaintiff's evidence, and consequently the case did not reach the stage for the introduction of any testimony on behalf of the defendant company, it is nevertheless apparent that there is a controversy between the parties as to what was said and done between the insured and the general agent of the company at this interview. The record clearly indicates that it is the contention of the company that the only thing done or attempted at that time was to change the method of premium payment on the policies from an annual basis to a semiannual basis and pay the first semiannual premium for the second year of the policy. For the purposes of this appeal, however, we must accept the contention of appellant as to what was done and said at that time. Appellant contends that the insured on that occasion told the general agent of the company that he could not carry the premium load on the two policies, that he could and would pay the annual premium on one policy and would have to drop the other; that the general agent told the insured that he did not like to see him drop one of the policies and that if he would pay one half of the annual premium on each policy they would extend credit for the remaining half and allow him to make payment thereof entirely at his own convenience.

Whatever was said or done at this time, it is conceded by all that the insured paid upon each policy, not one half of the amount of annual premium (which would have been $62.30), but the amount of a semiannual premium, $64.75, for which he received a receipt on the company's customary and usual form, the receipt as to each policy stating that it was for "one half annual premium." Subsequently, in due course, the company notified the insured as to each policy that premium in the amount of $64.75 would be due September 6, 1930, which notice also contained a provision as follows:

"Notice.—Effect of Failure to Pay Premiums.—The premium due on this policy as specified on the reverse side hereof may be paid to the representative named hereon in exchange for the Company's receipt properly countersigned, or paid to the Company at its Home Office, in Newark, N. J. Unless the premium then due shall be paid to the Company or to a duly appointed agent or person authorized to collect said premium by or before the day it falls due (or within a grace period of 31 days thereafter), said policy and all payments thereon will become forfeited and void, except as to the right to a surrender value, extended insurance, or paid-up policy, as may be provided in said policy or by statute.

"Notice to Policyholders as to Powers of Agents.—No Agent has power on behalf of the Company to make or modify any contract of insurance or waive any provision thereof, to extend the time for paying a premium, to waive any forfeiture, or to bind the Company by making any promise, or making or receiving any representation or information.

                    "William W. Van Nalts, Secretary."

Insured did not pay the premiums of $64.75 on the policies on September 6, 1930, or within 31 days thereafter, and on November 26, 1930, died, no premium having been paid on either policy subsequent to the $64.75 payment on March 6, 1930.

The company contends, of course, that premium payments were changed from an annual to a semiannual basis March 6, 1930, at which time a semiannual premium was paid; that the second semiannual premium for the second year of the policy came due September 6, 1930, and not being paid, the policies lapsed at the expiration of the grace period 31 days thereafter and were not in force or effect when the insured died. Appellant maintains,

on the other hand, that the policies were in full force and effect when insured died because on or prior to March 6, 1930, the general agent of the company accepted half of the annual premium which came due on that date and extended credit for the remaining half for an indefinite period, whereby the policies were forthwith continued in effect without any further payments whatsoever to and until March 6, 1931, and the expiration of the grace period thereafter.

██ ██ The policies in question were delivered in the state of Ohio where both the insured and his beneficiary resided. Whatever the transaction may have been which took place between the insured and the general agent of the company occurred in Ohio. The insured died in Ohio and his beneficiary resided in that state at the time of his death. It is too clear to require citation of authority that the rights of the parties upon this appeal must be governed by the law of Ohio. In the absence of any testimony in the record as to Ohio law, however, it will be presumed that the law of Ohio is the same as the law of South Dakota. Commercial Credit Co. v. Nissen (1926) 49 S. D. 303, 207 N. W. 61, 51 A. L. R. 287.

██ ██ We will assume for the purposes of this opinion that the general agent of the company accepted from the insured one half of the annual premiums coming due March 6, 1930, and orally agreed with the insured to extend credit indefinitely for the remaining portion thereof. We are of the opinion, nevertheless, that such agreement by the general agent for the extension of credit was not valid or binding upon the company. Each policy specifically provided against waiver or modification of any of its terms or provisions except by written endorsement signed by certain specified officers. Each policy specifically provided that no agent had power to extend the time for paying a premium. Such policy provision is authorized by law in this state and is embraced in the standard form of policy prescribed by our statute. Sections 9332-9337, R. C. 1919. The purported extension of credit was subsequent to the delivery of the policy (Cf. Couch on Insurance, § 522b). There can be no claim of ratification by officers of the company, for, upon this record, the most that can possibly be said to have been brought to the attention of the company is that there

had been a change from the annual to the semiannual method of premium payment. We find here no ground for an estoppel nor any evidence of waiver by the company of the policy provision. We are unable to perceive, upon the record in this case, any valid reason why the restrictions in the policy should not be binding upon the insured.

We are therefore of the opinion that verdict was properly directed below, and the judgment and order appealed from are affirmed.

All the Judges concur.